UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE COASTAL PLAINS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 04-CV-0174-B |
| | § | (Bank. Ct. No. 3-86-31299-HDH-7) |
| COASTAL PLAINS, INC., et al., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM ORDER</u>

Before the Court is an appeal by Industrial Clearinghouse, Inc. ("Industrial" or the "Appellant") from a final judgment of the bankruptcy court. Having conducted plenary review of the bankruptcy court's judgment, the Court **AFFIRMS** that judgment for the following reasons.

## I. BACKGROUND[1]

This appeal arises out of Chapter 11 filings by Coastal Plains, Inc. ("Coastal Plains") in April 1986. (Appeal at 6; Response at 6). The Chapter 11 case ultimately converted to a Chapter 7 filing. (November 23, 2003 Order at 1). Industrial appeals the orders of the bankruptcy court Judge Harlan Hale finding that Industrial did not own a potential malpractice claim against the law firm Jackson Walker that was once part of the bankruptcy estate. The bankruptcy court found, as a matter of law, that a legal malpractice claim could not be abandoned by the Chapter 7 Trustee back to Coastal Plains and/ or Industrial. (Appeal at 4).

---

[1] The facts are derived from the parties' pleadings and the evidence contained in the summary judgment record. Unless characterized as a contention by one of the parties, these facts are undisputed.

**A.**     <u>**The Coastal Plains Bankruptcy.**</u>

Jackson Walker represented Debtor-in-Possession Coastal Plains in the Chapter 11 proceeding.  (Appeal at 6; Response at 6).  Jackson Walker also represented Coastal Plains in filing an adversary proceeding against its largest supplier, Browning Manufacturing ("Browning") (the "Browning Adversary").  (Appeal at 7; Response at 6).  After a hearing on a proposed temporary restraining order ("TRO"), the bankruptcy court found that Browning had violated the automatic stay and ordered Browning to return Coastal Plains' inventory.  (Appeal at 7; Response at 6).

Westinghouse, Coastal Plains' principal secured lender, received a super priority lien in return for providing debtor-in-possession financing the company. (Appeal at 6).  Westinghouse ultimately moved to lift the automatic stay, submitting a stipulation (the "Stipulation") containing estimated values of Coastal Plains' assets, and its motion was granted.  (Appeal at 7-8).  Jackson Walker signed off on the Stipulation on behalf of Coastal Plains, and, according to the Appellant, failed to include the adversary claims against Browning.  (Appeal at 7; Response at 7 n. 4).  Westinghouse purchased Coastal Plains' assets in an auction held in October 1986.  (*Id.*).  In February of 1987, Industrial, purchased a portion of those assets, including the Browning Adversary claims which were valued at $1.24 million.  (*Id.* at 8).

**B.**     <u>**The Browning Adversary.**</u>

In April of that year, the Chapter 11 case was converted into a Chapter 7 case and Duke Salisbury was appointed as the initial trustee, but later resigned and was replaced by Jeffrey Mims ("Mims").  (Appeal at 8, 10; Response at 8).   During that same time period, Industrial was substituted for Coastal Plains as the named plaintiff in the Browning Adversary case, and the law firm of Baker, Mills, & Glast replaced Jackson Walker as counsel in that case.  (Appeal at 8).

(Appeal at 8).  The Browning Adversary had originally been referred by the district court to the bankruptcy court.  Judge Solis of the Northern District of Texas withdrew the reference and set the Browning Adversary for trial in district court in May of 1993.  (Appeal at 8).  Just before trial, however, Coastal Plains' Chapter 7 Trustee moved to intervene, claiming that the proper plaintiff was the Coastal Plains bankruptcy estate.  (*Id.*).  Judge Solis referred the issue of ownership of the claims against Browning to the bankruptcy court for determination.  (Appeal at 8-9).

After a three separate related hearings, in a memorandum order dated May 18, 1994, the bankruptcy court, Judge McGuire presiding, found that the Coastal Plains bankruptcy estate owned the tort claims against Browning, and that Industrial owned the contract claims.  (*Id.*).  The bankruptcy court subsequently approved an agreement between the Trustee and Industrial to split any recovery against Browning 15% (the Estate) to 85% (Industrial), but Browning appealed the validity of the agreement and ultimately won its appeal before the Fifth Circuit.  (Appeal at 10).

Finally, in early 1996, the Browning Adversary Proceeding was tried before district Judge Solis in a jury trial, and the jury found against Browning, awarding Industrial and the Trustee jointly $5 million for breach of contract, $2.5 million for conversion, $1.75 million for breach of fiduciary duty, $1.3 million for tortious interference, and $7.5 million in punitive damages.  (Appeal at 10).  The district court modified the verdict, however, and ordered Industrial and the Trustee to elect a single recovery between the tort and contract awards and also reduced the punitive damages award to $4 million and granted Browning a $1.4 million setoff.  (Appeal at 10).

Browning appealed the judgment, and the Fifth Circuit reversed and rendered in Browning's favor, holding that all claims, other than the tortious interference claim, were judicially estopped because the claims were not properly disclosed in Coastal Plains' bankruptcy schedules or the

Stipulation, both of which were submitted by Jackson Walker on behalf of Coastal Plains. (Appeal at 11); *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999).

C.   **The Bankruptcy Case is Closed.**

The Trustee, Mims, filed his Final Report on March 2, 2000. (Response at 8-9; Appeal at 11; Mims Affidavit). In the report, the Trustee did not mention a potential malpractice claim against Jackson Walker, and instead listed any potential lawsuit value at zero. (*Id.*). Additionally, the column of the schedule which would indicate an intent to abandon any assets under Bankruptcy Code sections 554(a) or (c) was left blank. Neither Coastal Plains nor Industrial objected at the time the report was filed, but three months later, Industrial attempted to file a "Schedule B-2" supplement to the report, including an "unliquidated cause of action" including a "claim for damages based upon professional malpractice against Jackson Walker, LLP." (Appeal at 8). On December 12, the bankruptcy case was closed and Mims was discharged as Trustee. (Appeal at 12).

D.   **Industrial Sues Jackson Walker in Texas State Court.**

Six months after the close of the bankruptcy case, Industrial sued Jackson Walker for professional malpractice in the Texas state district court, alleging that the law firm engaged in malpractice in its representation of Industrial prior to the merger and in its representation of Coastal Plains in the bankruptcy case. (Appeal at 12). The crux of the alleged malpractice claims against Jackson Walker lies in the fact that Jackson Walker represented Coastal Plains, Industrial,[2] and Westinghouse all during the same time period, but failed to disclose its conflicting relationship to the bankruptcy court. (Appeal at 7-8; May 18, 1994 Memorandum Opinion).

---

[2] Jackson Walker initially incorporated Industrial under another name. (Appeal at 8).

Industrial claims that, following its purchase of Coastal Plains assets, it merged with the company to form one surviving corporation, but Jackson Walker disputes the validity of any merger. (Appeal at 12; Response at 10).  On January 6, 2003, the state court granted Jackson Walker's motion for summary judgment against Industrial. (Appeal at 12; Response at 3).

**E.      Industrial Moves to Reopen the Bankruptcy Case.**

Industrial sought to reopen the bankruptcy case in May 2003, filing a  "Motion to Reopen Case and for Determination that Appointment of a Trustee is Necessary" ("Motion to Reopen") in the bankruptcy court, in an alleged attempt to "obtain clarification as to whether the malpractice claims against Jackson Walker remained property of the subject bankruptcy estate, and if so to order an abandonment of the malpractice claims to [Industrial]."  (Motion to Reopen).

On June 4, 2003, the bankruptcy court, Judge Hale presiding, reopened the case to examine the ownership issue.  (Appeal at 12; Response at 4).  No trustee was appointed at the time.  (*Id.*). Industrial filed a "Renewed Motion for Determination that Appointment of a Trustee is Necessary and a Motion to Abandon." (Appeal at 12; Response at 3).  The bankruptcy court held a hearing on the on August 1, 2003.  (Appeal at 12; Response at 4).  At the hearing, attorneys for Jackson Walker argued that the case had been wrongly reopened.  (Appeal at 12; Response at 4).  According to Industrial, the bankruptcy court did not review any evidence at the hearing aside from an affidavit from Mims, the former Trustee.  (Appeal at 12).

Following the hearing, Jackson Walker filed a written response to Industrial's motion "to reflect its August 1 positions and to respond to the issues scheduled for August 14." (Response at 4).  The bankruptcy court reviewed the briefing, and, although it had originally scheduled an evidentiary hearing on the issue of abandonment for August 14, 2003, it issued an order on August

12, 2003 closing the estate, denying Industrial's requested abandonment and cancelled the hearing as moot. (Appeal at 13; Response at 3-4). The Court found that its order to administratively reopen the case had been "improvidently granted," and that the Chapter 7 Trustee was aware of the potential malpractice claim and chose not to pursuit it, without any objection or appeal by Industrial. (August 14, 2003 Order; Response at 5-6).

Industrial then moved for clarification and reconsideration on August 22, 2003, and the bankruptcy court issued a separate order. (November 23, 2003 Order). In that order, the bankruptcy court denied the motion for reconsideration and explained that granting abandonment of the legal malpractice claim would "have the effect of an assignment" and be "contrary to public policy in Texas and therefore would not be permitted under § 554 of the Bankruptcy Code." (*Id.*).

Industrial filed the instant appeal on February 13, 2004, seeking a reversal of the bankruptcy court's decision regarding abandonment, as well as its decisions not to appoint a trustee and to re-close the case. *See generally*, (Appeal). In the alternative, Industrial claims that the bankruptcy court erred by failing to hold an evidentiary hearing on the issue of abandonment. (*Id.*). Jackson Walker filed its response on March 4, 2004, seeking dismissal of the appeal for lack of subject matter jurisdiction, and, alternatively, seeking affirmation of the orders of the bankruptcy court. *See generally*, (Response).

## II. ANALYSIS

### A.  Legal Standard.

Section 28 U.S.C. § 158(a)(1) and Federal Rule of Bankruptcy Procedure 8001(a) endow district courts with jurisdiction over bankruptcy appeals such as the one presently before the Court. A district court reviewing a decision of the bankruptcy court engages in plenary review of the

bankruptcy court's judgment, applying the standard of review "generally applied in federal court reviews," and "function[ing] as an appellate court." *Matter of Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992); *Matter of Coston*, 991 F.2d 257, 261 n. 3 (5th Cir. 1993) (citations omitted). The district court must not, however, set aside the bankruptcy court's findings of fact unless it is "clearly erroneous," and must give due regard to the opportunity the Bankruptcy Court had to judge the witnesses' credibility. *Webb*, 954 F.2d at 1104; Fed. R. Bankr. P. 8013. Under the law of the Fifth Circuit, although there may be evidence supporting a certain finding of fact, it is clearly erroneous if, after reviewing all of the evidence, the district court "is left with a firm and definite conviction that a mistake has been committed." *Matter of Missionary Baptist Foundation of Am., Inc.*, 712 F.2d 206, 209 (5th Cir. 1983) (citations omitted). The district court applies *de novo* review to mixed questions of law and fact. *Matter of Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir.).

**B.     The Rooker-Feldman Doctrine Does Not Apply.**

The first issue on appeal is Jackson Walker's contention that this Court lacks subject matter jurisdiction to review the bankruptcy court's decision. Jackson Walker asserts that the *Rooker-Feldman* doctrine applies and requires dismissal of the entire appeal for lack of subject matter jurisdiction. (Response at 10-11). Essentially, the *Rooker-Feldman* doctrine prohibits lower federal courts from engaging in "appellate review of state court decisions." *In the Matter of Reitnauer*, 152 F.3d 341, 343 (5th Cir. 1998) (citations omitted). The doctrine is inapplicable in the present situation, however. In *Matter of Meyerland Co.*, 960 F.2d 512, 516 (5th Cir. 1992), the Fifth Circuit stated that "[u]nder the *Rooker-Feldman* line of cases, federal statutes define 'final state court judgments' as those 'rendered by the highest court in which a decision could be had.'" *Id.* As discussed previously, Industrial's motion to reopen the bankruptcy case was filed after a ruling in the

state district court; thus, this Court has subject matter jurisdiction over the instant appeal, and the *Rooker-Feldman* doctrine does not apply. The Court will therefore proceed to address the parties' arguments on appeal. Industrial raises three points of error by the bankruptcy court on appeal.

### C.   Administration of the Malpractice Claim.

Industrial claims that the bankruptcy court erred in finding that Coastal Plains' professional malpractice claim against Jackson Walker was administered by the Trustee. (Appeal at 13). The Court will explain Industrial's first point of error for purposes of clarity. The Court will not, however, decide whether the Trustee properly administered the potential malpractice claim because the appeal turns on another point which eliminates the need to address this point of error on appeal.

Bankruptcy law provides for automatic abandonment to the debtor of any scheduled property not properly administered upon the closing of the bankruptcy case. (Appeal at 13 (citing *In re Winburn*, 167 B.R. 673 (Bankr. N.D. Fla. 1993); 11 U.S.C. § 554(c)). According to Industrial, it is undisputed that the malpractice claim was scheduled, that the claim was not administered, and was therefore automatically abandoned under section 554(c) of the Bankruptcy Code. (Appeal at 15) (citing *Starrett*, 541 A.3d at 1121, 1122).

In order to demonstrate that the claims were abandoned by operation of law, Industrial must demonstrate that the Trustee was aware of the claims against Jackson Walker as property of the bankruptcy estate "such that the court could impute an intent to abandon the asset upon the closing of the case." *Starrett*, 541 A.3d at 1121, 1122. Additionally, Industrial must also demonstrate that the claims were not actively administered at the time of the alleged abandonment. *Id.* Industrial claims that it met its burden by demonstrating at the August hearing that Mims was aware of the

-8-

claim and yet took no action.[3]

In its November 24, 2003 Order, the bankruptcy court acknowledged that "The practical result [of the Order] is that the legal malpractice claim against Jackson Walker remains in the bankruptcy estate never to be unleashed." (November 24, 2003 Order at 8). Industrial cites *Kogman v. Herzig*, 96 B.R. 264, 266 (8th Cir. BAP 1989) for the proposition that the bankruptcy court had a duty to reopen the Coastal Plains' estate because there was prima facie proof that it had not been fully administered. *Id.*; (Appeal at 19). Moreover, Industrial contends that the bankruptcy's decision in re-closing the estate as it did amounted to an abuse of discretion – both because the malpractice claim was an "asset of substance" and because the bankruptcy court made its decision on "an erroneous view of the law." *Kogman*, 96 B.R. at 266; (Appeal at 19).

In response to Industrial's arguments regarding abandonment, Jackson Walker asserts that the claim never belonged to Coastal Plains the debtor because it arose post-petition, and was instead the property of the bankruptcy estate. (Response at 19-20); 11 U.S.C. §541(a)(7); *In re C-Power Prod., Inc.*, 230 B.R. 800, 803 (Bankr. N.D. Tex. 1998)(Response at 21); 4 COLLIER ON BANKRUPTCY ¶ 521.06[3][a] (15th rev. ed. 2002). Additionally, Jackson Walker claims that the malpractice claim was not properly scheduled, and that, in the alternative, if the Court finds that it was properly scheduled, then Trustee properly administered the claim. Because the post-petition malpractice claim was not required to be scheduled, Jackson Walker argues, it could not have been

---

[3] On February 2, 2005, Industrial moved, without citation from any authority, to supplement its appeal with deposition testimony of Mims from a related case. The Court denies Industrial's motion, but notes that it has reviewed the proposed supplement and finds that the evidence would not affect the outcome of the Court's decision.

abandoned by operation of law. (Response at 21); *In re DeLash*, 260 B.R. 4, 9 (Bankr. E.D. Cal. 2000).

Second, Jackson Walker asserts that, in any event, the malpractice claim was not "properly scheduled" pursuant to Bankruptcy Code section 521(1), because (1) the "Supplement to Schedule B-2" that included a malpractice claim against Jackson Walker was improperly filed by the CEO of Industrial, not the Trustee of the Coastal Plains estate, (2) it was filed after the Court approved the Trustee's Final Report, which was filed without objection by Industrial, and (3) it was not served on any creditors of the estate. (Response at 21).

Third, Jackson Walker disputes Industrial's assertion that the claim against the firm was not administered (Appeal at 14) as inconsistent with the state court findings, the bankruptcy court findings, and the presumption of full administration established by FED. R. BANKR. P. 5009. (Response at 22). Additionally, Jackson Walker, attacks Industrial's reliance upon *Starrett v. Starrett*, a case which Industrial cites in support of its analysis of the lack of administration. (Appeal at 14; Response at 22). In *Starrett*, the plaintiff had listed a pre-petition judgment in her asset schedule when she filed for bankruptcy. Years later, the plaintiff sought to enforce the judgment in state court after the bankruptcy estate had closed. The defendant husband argued that the judgment remained part of the bankruptcy estate, but the state court of appeals found that the judgment had been abandoned to the plaintiff because "the absence of active administration of the scheduled estate asset for nearly three years clearly impute[d] an intent to abandon the asset when the case was closed." 541 A.2d at 1123. Jackson Walker attempts to distinguish *Starrett* on the basis that the state appellate court found that there was an "absence of active administration of the asset," not that the Trustee "ceased" administration of the asset as was allegedly the case here. 541 A.2d at 1123.

-10-

Because the Court's affirmation of the bankruptcy court's decision turns on other grounds, as discussed below, the Court declines to address the issue of whether the property was properly administered.

**D.**     **The Bankruptcy Court Did not Err in Finding that Abandonment of the Malpractice Claim is Against Texas Public Policy.**

The next issue is whether the bankruptcy court erred in finding that the malpractice claims could not be abandoned because abandonment of such claims would be contrary to Texas public policy. In so holding, the bankruptcy stated:

> Any abandonment of the legal malpractice claim under § 554 of the Bankruptcy Code, either by a court appointed trustee or by operation of law, that would result in ICHI having the right to bring the legal malpractice claim against the former attorneys of Coastal Plains, Inc. Could have the effect of an assignment of that legal malpractice action. Such a result...is contrary to public policy in Texas and therefore would not be permitted under § 554 of the Bankruptcy Code.

(November 24, 2003 Order; Response at 25).

Jackson Walker argues that Coastal Plains was a defunct entity under Chapter 7 of the Bankruptcy of the Bankruptcy Code upon the closing of an estate; thus no estate assets could have been abandoned to the entity. (Response at 24; 11 U.S.C. § 727(a); *Matter of Liberty Trust Co.*, 130 B.R. 467, 471 (W.D. Tex. 1991) (citations omitted) (finding that a corporate debtor is rendered "defunct" upon the close of a Chapter 7 bankruptcy case and abandoned assets thus remain with the Trustee). Industrial objects to Jackson Walker's characterization and argues that because Jackson Walker represented Coastal Plains during the Chapter 11 proceedings, as a debtor-in-possession, Coastal Plains, rather than the estate, was the firm's client. (*Id.*) Industrial cites an opinion of the bankruptcy court for the Northern District of Texas, *In re C-Power Prod., Inc.*, which held that, in

-11-

post-petition malpractice claims, the client is the debtor or the debtor-in-possession, not the bankruptcy estate, and that the client alone may prosecute the claim. *Id.*, 230 B.R. 800, 803-04 (Bankr. N.D. Tex. 1998) (Felsenthal, J.). Industrial insists that, as a result of its alleged merger with Coastal Plains, Industrial is the client and thus owns the claim against Jackson Walker.

The Court agrees with the bankruptcy court, however, that Industrial's argument puts "form over substance." (November 24, 2003 Order at 8). The Court agrees with Jackson Walker and the bankruptcy court that Industrial essentially "seeks to have the claim transferred to itself as a result of a purported 'merger with the post-Chapter 7 debtor entity.'" (Response at 26, Citing November 24, 2003 Order). Industrial, not Coastal Plains, would then own the malpractice claim, violating the Texas legislature's primary policy concern that "assignments will lead to commercial marketing of claims and increased litigation." *Id.; Mallios v. Baker*, 11 S.W.3d at 157, 165 (Tex. 2000) (Hecht, J., concurring); *see also*, *In re C-Power Prod.*, 230 B.R. 800, 802-03 (Bankr. N.D. Tex. 1998) (finding that the malpractice claims of the debtor-in-possession could not be sold to a third party); *In re J.E. Marion, Inc.*, 199 B.R. 635, 637 (Bankr. N.D. Tex. 1998) (holding that post-petition legal malpractice claims of the debtor could be prosecuted by the trustee).

In the case relied upon by Industrial, *In re C-Power Prod., Inc.*, Judge Felsenthal of the bankruptcy court for the Northern District of Texas found that a debtor-in-possession could not transfer its legal malpractice claims to via sale to another entity, because, under Texas law, a client may not assign such a claim. 230 B.R. at 802-03. The Court finds Industrial's attempt to distinguish this case on the basis of its purported merger with Coastal Plains unavailing. Industrial obtained its interest in Coastal Plains via a purchase from Westinghouse in which it attempted to buy, among other things, the right to pursue the malpractice claims. This is precisely the type of assignment of

malpractice claims prohibited by Texas public policy.  As Judge Felsenthal noted in *In re C-Power Prod., Inc.*, Texas law's restriction on the assignment of malpractice claims "removes from the general ownership interest the right to transfer property."  Consequently, the Court AFFIRMS the bankruptcy court's November 24, 2003 Order and DENIES Industrial's appeal on the basis that abandonment to Industrial would constitute an impermissible assignment under Texas law.  *Mallios v. Baker*, 11 S.W.3d at 157, 165 (Tex. 2000) (Hecht, J., concurring); *see also In re C-Power Prod., Inc.*, 230 B.R. 800, 803-04.

**E.**     **The Bankruptcy Court Did Not Err in Cancelling the Evidentiary Hearing on the Abandonment Issue.**

Industrial argues, in the alternative to its first two points of error, that the bankruptcy court erred by not granting Industrial a hearing on the abandonment issue because there is an unresolved issue of material fact regarding the issue of abandonment. (Appeal at 19). Jackson Walker correctly points out, however, that the bankruptcy court was not required to grant Industrial an evidentiary hearing on either its request to reopen the case or to find abandonment. (Response at 27); *In re Canal St. Ltd. Partnership*, 269 B.R. 375, 380 (Bankr. 8th Cir. 2001) (holding bankruptcy courts are not required to hold hearings on motions to reopen bankruptcy cases); *In re Sunflower Racing, Inc.*, 226 B.R. 665, 672 (D. Kan. 1998) (holding that bankruptcy courts who already have a factual record need not conduct a hearing on a motion to reopen a bankruptcy case).  Furthermore, Industrial did not include in its Motion for Reconsideration and Clarification any evidence which it would have presented if it had been given the opportunity. (Response at 27-28).  Finally, in its current appeal to this Court, Industrial has not pointed to any specific evidence nor described how any specific evidence would have affected the outcome if it had been presented at a hearing.

-13-

(Response at 28).  Because both the Federal Rules and the Bankruptcy Rules require a showing of harm from points of error regarding the exclusion of evidence, Jackson Walker contends that Industrial has no basis for reversal on this point.  The Court agrees and AFFIRMS the decision of the district court in not granting Industrial an evidentiary hearing.

### III.  CONCLUSION

For the reasons discussed, the bankruptcy court's orders of August 14, 2003 and November 24, 2003 are AFFIRMED.  Industrial's appeal is DENIED in its entirety.

**SO ORDERED.**

SIGNED May  31st , 2005

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE